MUCKLER, Respondent, v. GUARANTEE FUND LIFE ASSOCIATION, Appellant.

(208 N. W. 787.)

(File No. 5304.    Opinion filed May 5, 1926.)

1.  Insurance—Life Policy, Providing for Reinstatement After Default in Payment of Premiums on Proof of Certain Facts Satisfactorily to Insurer, Held to Revive, if These Facts Are Certified in Application for Reinstatement and in Fact Exist.

    Policy of life insurance, providing for reinstatement after default in payment of premiums on proof of facts of good

health, temperate habits, and approved occupation satisfactorily to the insurrer, held to automatically revive, if these facts are certified in application for reinstatement and in fact exist, as, while original application for life insurance is not binding until accepted, application for reinstatement is, usually, a step in performance of a prior contract.

2.  **Insurance—Life Insurer May Reject Application for Reinstatement After Death of Insured if It Would Have Been Justified in Rejecting Application or Requiring Further Proof When Application Was Executed.**

Life insurer may reject application for reinstatement of lapsed policy after death of the insured, if it would have been justified in rejecting the application or requiring further proof before reinstatement of policy at the time the application was executed.

3.  **Insurance.**

Lapsed life policy is not reinstated until insured fully complies with conditions specified therefor.

4.  **Insurance—Lapsed Life Policy, Subject to Reinstatement on Satisfactory Proof of Good Health, etc., Held Not Reinstated by Application for Reinstatement, Which Falsely Stated Applicant Had Sustained No Personal Injuries Nor Been Attended by Physician, Though Applicant Was in Fact in Good Health.**

Lapsed life insurance policy, subject to reinstatement on proof satisfactory to the insurer of good health, temperate habits, and approved occupation, held not reinstated by an application for reinstatement, in the absence of acceptance of it, which falsely stated that applicant had sustained no personal injuries nor been attended by a physician, although applicant was in fact in good health.

5.  **Insurance—Reinstatement of Lapsed Life Policy, Subject to Reinstatement on Satisfactory Proof of Certain Facts, Will Not Be Effected, in Absence of Insurer's Acceptance of Application Therefor, Unless to Require More Than Proof Offered Would Be Unreasonable.**

Reinstatement of lapsed life policy, subject to reinstatement on proof satisfactory to insurer of good health, temperate habits, and approved occupation, will not be effected, in the absence of acceptance of application therefor, unless to require more than proof offered would be unreasonable, and jury's verdict thereon on testimony of nonexpert witnesses as to insurability does not bind insurer.

Note.—See, Headnotes **(1)** and **(2)**, American Key-Numbered Digest, Insurance, Key-No. 365(2), 32 C. J. Sec. 642 (Anno.); **(3)**

Insurance, Key-No. 365(2), 32 C. J. Sec. 639; (4) Insurance, Key-No. 365(2), 32 C. J. Sec. 640 (Anno.); (5) Insurance, Key-No. 365(2), 32 C. J. Sec. 640.

Appeal from Circuit Court, Minnehaha County; HON. JOHN T. MEDIN, Judge.

Action by Mary E. Muckler against the Guarantee Fund Life Association. Judgment was rendered for plaintiff, a new trial denied, and defendant appeals. Judgment and order overruling motion for new trial reversed.

*Cherry & Marker,* of Sioux Falls, for Appellant.
*Krause & Krause,* of Dell Rapids, for Respondent.

BURCH, C. This action is brought by plaintiff, beneficiary in a life insurance policy written by defendant upon the life of Frederick Muckler, to recover the amount of said policy. Trial was to a jury. Verdict was returned for plaintiff, and judgment rendered thereon. From the judgment and order denying a new trial defendant has appealed.

The policy was issued on the 6th day of July, 1918, and Frederick Muckler died on the 14th of October, 1920. Two yearly premium payments were made, but, the third premium not having been paid on July 6, 1920, or within one month, the period of grace, the policy lapsed according to its terms on the 6th of August, 1920. On the 12th of October, 1920, two days before the death of insured, steps were taken to reinstate the policy. The policy is not unusual in form. It provides that failure to make payment of premiums on or before due forfeits the insurance without action on the part of the company, but provides also that the insured is entitled to grace of one month within which to make payment of such premium after it matures, during which month the insurance shall continue in force, and further provides:

"This policy may be reinstated, after default in payment of premiums, upon proof of good health, temperate habits, and approved occupation, all of which must be satisfactory to the association, and the payment of all arrearages with interest at the rate of six per cent per annum."

There is evidence that appellant's state agent went to the home of insured, and there met respondent, and took up with her the matter of reinstating her husband's policy; that respondent

had an application for reinstatement which had been signed by her husband a day or two before, but which had not been sent in to the company because of insufficient money to make the payment required; that appellant's agent told respondent that a note might be given, and, as she was beneficiary under the policy, the note would be accepted from her without her husband's signature; that she thereupon gave her note and the application to said agent, and the note and application were sent to the company by the agent. Before the application was acted upon and the note accepted by the company, insured was killed by a Holstein bull, and on notice of this fact the company returned the note and refused to reinstate the policy. There was also evidence that the agent told respondent that the insurance would be in effect at midnight following the acceptance of the application by him. Much of this proof was admitted over the objection of appellant on the ground that it was an attempt to show a waiver of the terms of the policy which the agent had no power to make, and which was not within the issues because not pleaded.

[1] Appellant's objection and the several assignments of error based thereon are made upon the assumption that respondent cannot recover without proof of a waiver of the terms of the policy. Appellant argues that no waiver can be proved unless pleaded, and that the company's state agent had no authority to waive any provision of the policy. Conceding this, respondent says:

"The complaint was framed upon the theory that the policy never 'ceased, terminated, or became nonexistent'; that, if lapsed, the same was by its own terms and conditions subject to be revived and reinstated as of its original force and effect, and that it was therefore sufficient to allege the then existing efficacy of the insurance policy. In other words, though the insurer's liability under the policy had been interrupted and suspended, the assured's right to reinstate it, provided by the terms of the insurance contract, remained intact, and the policy having in accordance with its provisions been reinstated thereunder, was in fact in full force and effect."

The position thus taken by respondent makes it unnecessary to decide the questions presented by those assignments concerning a waiver. Respondent argues that there is reserved to assured

the absolute right to revive his dormant policy as a part of the contract upon the conditions specified, to wit, good health, temperate habits, and approved occupation, which, if certified in the application for reinstatement, and in fact then existing, automatically revives and reinstates the merely dormant policy. We think respondent is right in this interpretation of the insurance contract. The provisions of the policies considered in the case of Prudential Insurance Co. v. Union Trust Co., 105 N. E. 505, 56 Ind. App. 418, are so similar as to make that case peculiarly applicable here. It was there contended that, because the applications for revival of the policies was not received at the insurance company's home office prior to the death of the insured, there was no revival, and could be no revival, of insurance on the life of a person already dead. The Indiana court said:

"The failure of the insured to pay the premiums as they became due did not work a forfeiture of his insurance. * * * During such period the insured had inchoate insurance which he might, at any time, ripen or revive by a performance of the conditions of his contract; and, when such conditions were complied with by the insured, while in life, and within the period stipulated, it was not within the power of appellant, under its contract, to arbitrarily refuse to renew or revive such insurance. It is true the contract required the insured to furnish with his application to revive, evidence of his insurability satisfactory to appellant, * * * but such provisions furnished no ground for arbitrary refusal to revive when the conditions of the policies had once been fully and completely complied with, and appellant's approval or disapproval of the proof furnished, whenever made, was necessarily required to rest on the facts and conditions existing at the time of the attempted revival, and such approval or disapproval related back to that time. If at that time the insured had failed in any substantial particular to comply with the conditions of his contract, or if any valid objection then existed to the form or substance of the application to revive, or if the proof of insurability as then furnished did not meet the requirements of such contract, or was false, or for any other reason was subject to a valid objection, appellant's contract permitted it to reject such application to revive, and such rejection would relate back to the date of such application. On the other hand, if at the time of the filing of such

application to revive, and the signing and delivery of the necessary papers accompanying it, there then existed no valid objection to the form or substance of such application, or papers or the proof furnished therewith, appellant, under its contract, could do but one thing, viz., revive the policy, and such revival would relate back to the time of the application to revive; and the mere fact that the insured, after he had fully complied with the conditions of his contract, died from a cause in no way involved in his proof of insurability which accompanied his revival of application, but wholly the result of accident, could in and of itself furnish no valid ground or excuse for a refusal by appellant to revive such policies."

See, also, Leonard v. Prudential Insurance Co., 107 N. W. 646, 128 Wis. 348, 116 Am. St. Rep. 50; Davidson v. Old People's Mutual, etc., Soc., 39 N. W. 803, 39 Minn. 303, 1 L. R. A. 482; Officer v. N. Y. Life Ins. Co., 216 P. 253, 73 Colo. 495. In the last cited case the Colorado court says:

"That the rights of an insured, making an application for reinstatement of a lapsed policy, are widely different from the rights of those making an original application for insurance, must be conceded, and this principle is so plain as to need neither elaboration nor citation of authorities."

An original application for insurance is an offer to contract not binding until accepted, while an application for reinstatement is usually, if not always, a step in the performance of the provisions of a contract already made, the effect of which can be determined only by recourse to the contract.

[-5] In the instant case insured had a right to reinstate his insurance, upon payment of required premiums, with interest, and upon furnishing proof, satisfactory to appellant of good health, temperate habits, and approved occupation. Did insured meet the contract requirements and thus reinstate his insurance? Aplying the rule announced in the Indiana case, Prudential Ins. Co. v. Union Trust Co., supra, the company may reject the application, if any valid objection existed at the time it was made, and such rejection will relate back to the date of the application. If the company would have been justified in rejecting the application, or requiring further proof before reinstating the policy, at the

time the application was executed, it may do·so now, although the death of insured has prevented his complying therewith. Until insured has fully complied with the contract on his part, there is no reinstatement, and the policy remains lapsed or dormant. The application for reinstatement, signed by Frederick Muckler, declares:

"I am in good health and of sound constitution; that since the date of my examination for said insurance I have been of temperate habits, have sustained no personal injury, have been attended by no physician and have been afflcited with no disease or illness whatever.· (If any exceptions, give name and address of physician, nature of illness, date or treatment and result.) None."

The proof shows that in October, 1919, insured fell down a stairway, and suffered an injury,. and thereafter, as a result of the injury, or some disease, he was in such physical condition that he was being attended with frequency by a physician; that he had made an affidavit that he was totally and permanently disabled for life; and procured a certificate from his physicians to the same effect, which were used in an effort to procure the waiver of the payment of a premium in another life insurance policy in another company. Thus it appears that the statement or proof, if it may be so called, in the application was false. True, an effort was made at the trial to prove that insured had fully recovered, and that he was in fact in good health at the time of his death. But this is not sufficient to cure the defect in the proof furnished the company. If we are to say that the law will imply that the company is satisfied with the proof, when under the circumstances it ought to be, we cannot say it ought to be satisfied with false statements. Had the truth been disclosed, we do not think the company would have been unreasonable in refusing to · reinstate until additional proof of insurability was furnished, including a physical examination of the insured by one of its physicians. It it not bound to accept the verdict of a jury found upon evidence given by nonexpert witnesses of the insurability of an applicant. Such is not the satisfactory proof contemplated by the contract. When the company has not in fact approved the proof, the law will not approve it and compel the company to be satisfied therewith, unless it is of such a character that to require more would be unreasonable.

Respondent having failed to show a reinstatement of the insurance covered by the policy, her action must fail. The judgment and order overruling a motion for new trial is reversed.

CAMPBELL, J., not sitting.

MISER, Circuit Judge, sitting in lieu of SHERWOOD, J.

POLLEY, J., not sitting.